UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| Ronnie James, | ) | Civil Action No.: 4:18-cv-01612-RBH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| Andrew Saul, Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

Plaintiff Ronnie James ("James") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") pursuant to the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Thomas E. Rogers III, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF No. 21].

**Factual Findings and Procedural History**

On January 13, 2014, James filed an application for DIB benefits, alleging that by virtue of a disabling condition, he became unable to work on July 19, 2013. He was fifty-five years old on the alleged disability onset date. James alleges he became unable to work due to upper and lower body joint/arthritis issues, chronic obstructive pulmonary disease (COPD), anxiety, and bipolar disorder. [Tr. at 354]. James' medical history and testimony regarding his impairments have been adequately set forth in great detail in the R&R and reviewed by this Court. Briefly stated, James was diagnosed with COPD in June of 2012. [Tr. at 493]. He has been treated for anxiety since at least October 2013;. His medical

records generally indicate a normal mood and affect, as well as minimal problems with concentration and understanding. [Tr. at 476; 344; 969;713; 918; 604; 736].[1] The records reveal that James is generally an active individual who handles many of the household chores, drives by himself, goes shopping, and is the sole caregiver for his grandson. [Tr. 308-87]. In some medical records, James describes having little energy, as well as experiencing joint pain and joint swelling. [Tr. at 479]. However, musculoskeletal exams during that time were normal. [Tr. at 480]. Dr. Kelly, a state agency consultant, examined James for mental impairments and found he had a normal gait, he had unrestricted social functioning, and his memory, attention and concentration appeared to be within normal limits. Her impressions were that James may suffer from adjustment disorder with depressed and anxious mood. [Tr. at 511]. Another state agency consultant, Dr. Rudnick, determined James had nonsevere impairments. [Tr. at 206]. These results were confirmed by Dr. Anderson and Dr. Lenrow, two other state agency consultants. [Tr. at 218-220]. Dr. Bell, a physician who saw James only one time completed a mental health questionnaire, but he was unable to provide any work-related limitations as he only saw James for one visit. [Tr. at 556]. Another treating physician, Dr. Moyd, also completed a mental health questionnaire in 2014 and determined that James had a good ability to complete basic activities of daily living and simple routine tasks, good ability to relate to others, and adequate ability to complete complex tasks. He diagnosed James with "stated forgetfulness." [Tr. at 559].

James' records indicate continued problems with shortness of breath, and on August 12, 2015 a pulmonary function test showed suspected moderate obstructive ventiliary defect. [Tr. at 676,770]. In August of 3015, James was prescribed baclofen for fibromyalgia after complaining of joint pain and

---

[1] However, in at least one medical record, James' records suggest otherwise. He is described as having cried talking about his daughter's death at one visit. He was further described as being irritable and angry most of the time and could not stay focused at work. He scored positive for history of manic or hypomaniac symptoms. [Tr. at 573].

muscle aches and an exam revealed tender spots. [Tr. at 914]. He also began taking prednisone to treat fibromyalgia but was not interested in exercising to help relieve some of his pain. [Tr. at 909; 757]. In 2016, James continued to have relatively normal examination results. A March 2016 MRI showed disc space narrowing with minimal bulging discs at L2-5. [Tr. at 717, 997, 1076]. On July 28, 2016, James discussed disability paperwork with Dr. Moyd. In this paperwork, his fibromyalgia was assessed as "improved." [Tr. at 854]. He underwent a right hallux cheilectomy on December 7, 2016. [Tr. at 696, 715]. Medical records indicate James was not always compliant with taking prescribed medication, such as Valium. In the records presented to the ALJ, his exams were generally normal, though one medical record indicated that James changed his reporting of his history throughout his exam. [Tr. at 1024]. In April of 2017, James reported to Dr. Moyd that he had aching pain in his back and that he felt a tingling sensation from his head to his toes. [Tr. at 1015-18]. At his hearing, James reported that while he still feels he has fibromyalgia, it is mild. [Tr. at 184-185].

The Social Security Administration denied his application initially and on reconsideration, therefore James requested a hearing before the Administrative Law Judge ("ALJ"). The ALJ held a hearing on April 28, 2017, where both James and a vocational expert gave testimony. Thereafter, the ALJ denied his claim on August 2, 2017, finding that he was not under a disability as defined by the Social Security Act, as amended.

The ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> (2) The claimant has not engaged in substantial gainful activity since July 19, 2013, the alleged onset date (20 CFR 416.1571 *et seq.*).
>
> (3) The claimant has the following severe impairments: osteoarthritis;

chronic obstructive pulmonary disease; fibromyalgia; depression; and anxiety (20 CFR 416.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.1520(d), 416.1525, 416.1526).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except no climbing, crawling, or balancing; no exposure to extreme hazards or extreme temperatures; no concentrated exposure to lung irritants; in a low stress setting with only occasional decision making or changes and only occasional interactions with the public.

(6) The claimant is unable to perform any past relevant work (20 CFR 416.1565).

(7) The claimant was born on July 20, 1957 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 416.1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 416.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.1569 and 416.1569(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from July 19, 2013, through the date of this decision (20 CFR 404.1520(g)).

[ECF No. 12-4, pp. 16-26; Tr. at 47-56].

After the ALJ's denial of benefits, James submitted additional evidence to the Appeals Council

and requested a review of the ALJ's decision. The Appeals Council denied this request for review, making the ALJ's decision the final decision for purposes of judicial review. On June 13, 2018, James filed a complaint seeking judicial review of the Commissioner's decision. [ECF No. 1]. Both Plaintiff and Defendant filed briefs [ECF No. 16; ECF No. 17; ECF No. 18], and the Magistrate Judge issued a Report and Recommendation on July 17, 2019, recommending that the Commissioner's decision be affirmed. [ECF No. 21]. The Magistrate Judge recommends affirming the Commissioner's decision because substantial evidence exists to support the ALJ's decision that James was not disabled within the meaning of the Social Security Act during the relevant time period. James filed objections on July 31, 2019. [No. 23]. Defendant replied to these objections on August 13, 2019. [ECF No.28].

## Standard of Review

**I.    Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir.

5

2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

6

## **Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1).

Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing past relevant work;[3] and (5) whether the impairment prevents him from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish her impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

8

the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## Analysis

**I. RFC Analysis**

James objects to the Magistrate Judge's recommendation that substantial evidence supports the ALJ's RFC determination. He argues that had the ALJ provided appropriate weight to the fibromyalgia diagnosis and evaluated his fibromyalgia symptoms pursuant to SSR 12-2p, the resulting RFC would likely have been different. The Commissioner argues that substantial evidence supports the ALJ's decision because the ALJ gave sufficient reasons for determining that James' fibromyalgia does not meet a listing or otherwise affect his ability to work to a degree that would equate to a greater limitation within the RFC.

The RFC is a determination by the ALJ, based on all relevant medical and non-medical evidence, of what a claimant can still do despite his impairments. *See* 20 C.F.R. § 416.945; SSR 96-8p, 1996 WL 374184 (July 2, 1996). SSR 96-8p provides, "[t]he RFC assessment is a function-by-function

9

assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). An RFC assessment must include a discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. SSR 96-8p, 1996 WL 374184, at *7. While there is no medical listing for fibromyalgia, Titles II and XVI of Social Security Ruling 12-2p provide guidance in deciding whether a person has a medically determinable impairment. SSR 12-2p defines fibromyalgia as follows: "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that persisted for at least 3 months." SSR 12-2p provides further guidance as to how to consider fibromyalgia in the five-step sequential evaluation process to determine disability. Specifically, in determining the RFC, the Ruling provides, "[f]or a person with FM [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p. Courts have recognized the subjective nature of fibromyalgia symptoms. *See Dowell v. Colvin*, No. 1:12CV1006, 2015 WL 1524767, at *3 (M.D.N.C. April 2, 2015) (stating that numerous courts have recognized that fibromyalgia symptoms are entirely subjective). Fibromyalgia will be considered an impairment if there is a diagnosis, and that diagnosis, along with the evidence further described in the Ruling, is not inconsistent with other evidence of record. SSR 12-2p.

While James did not seek disability benefits due either in whole or in part to fibromyalgia, his medical records document issues related to his diagnosis of fibromyalgia. SSR 12-2p provides general guidance and criteria on how to determined whether fibromyalgia is a medically determinable impairment. These criteria include a history of widespread pain, at least eleven positive tender points upon physical examination, and evidence that other disorders that could cause the same symptoms were

10

excluded. SSR 12-2p thus provides that, much like any other claim for disability benefits, there must be sufficient objective evidence to support a finding that the impairment precludes the claimant from engaging in substantial gainful activity. SSR 12-2p, 2012 WL 3104869. at *2 (July 25, 2012).

At step two of the evaluation, the ALJ determined that fibromyalgia was a severe impairment. However, at step three, the ALJ determined that James' combination of impairments were not so severe as to require a finding that James is disabled. In so finding, the ALJ specifically considered James' complaints of fibromyalgia and whether he would meet a listing. However, the ALJ noted that the records do not document the type of limitations, such as the inability to ambulate effectively, inability to perform fine and gross movements effectively, and compromise of a nerve root or spinal cord, that would warrant meeting a listing or a finding of disability. He further noted within his opinion that James' own testimony was that while he felt sore all over, his fibromyalgia was "mild." Moreover, the ALJ explained that the record, including James' testimony, reveals that he performs "extensive activities of daily living," while otherwise having a lack of supporting medical evidence to document that his impairments necessitated a more restrictive RFC. The Magistrate Judge also noted that the overall medical records are consistent with James' activities of daily living in that he did not need to see a rheumatologist, and he had relatively normal examinations.

Unlike the cases cited by James in his objection, in this case, there is a lack of objective findings, as well as a lack of testimony regarding subjective symptoms to support a more restrictive RFC. The ALJ explained that it was James' own testimony, as well as the extensive nature of his daily activities, which he had been able to perform over a long period of time, that led to the ALJ's determination that while it is a severe impairment, James' issues with fibromyalgia did not warrant

11

more significant restrictions.[4] Further, while James points out that there is a waxing and waning nature associated with fibromyalgia, as indicated by the ALJ, his medical records and testimony simply fail to establish the level of impairment with this condition that would necessitate a more restrictive RFC.

SSR 12-2p sets forth an explanation as to how a claimant can establish whether fibromyalgia is a medically determinable impairment. SSR 12-2p further explains how to properly evaluate fibromyalgia under the Act. While there is indeed a subjective component to fibromyalgia and a lack of objective evidence does not necessarily mean that an individual does not suffer from fibromyalgia, here the ALJ indeed found fibromyalgia to be a severe impairment, and he has clearly explained his reason for not including further restrictions within the RFC. Accordingly, this Court finds that substantial evidence supports the ALJ's RFC determination. Plaintiff's objection is overruled.

## II. Evidence Submitted to Appeals Council

James further objects to the determination that it was proper for the Appeal's Council to reject the additional evidence submitted to it for review. The Commissioner argues that the Magistrate Judge properly recommended finding that the Appeals Council's denial of review did not necessitate remand. The Appeals Council noted that James provided medical evidence from Carolina Pine Regional Medical Center dated May 18, 2017, as well as Medical Evidence from Pee Dee Orthopedic Associated dated June 30, 2015 through July 12, 2017. The Appeals Council determined that this evidence did not show

---

[4] For example, in *Chandler v. Colvin*, the claimant had submitted the opinion of a physician who had diagnosed her with fibromyalgia and had indicated that she often complained of pain, swelling, and fatigue. Further, she was seeing a rheumatologist and her family physcan wrote a letter to her counsel indicating that she would have severe limitations arising out of her pain disorder, that she had a history of widespread pain, that she had sixteen of eighteen trigger points identified by a rheumatologist, and her condition could not be explained by another condition. *Chandler v. Colvin*, No. 1:15-cv-214, 2017 WL 653983, at *3-4 (N.D. W. Va. Jan. 31, 2017). Similarly, the claimant in *Rogers v. Comm'r of Social Sec.* had an extensive medical history detailing her issues with rheumatoid arthritis and fibromyalgia, a medical opinion from a doctor discussing the severity of her condition, and her own allegations of subjective symptoms. 486 F.3d 234 (6th Cir. 2007). This type of evidence is simply not present in the case before this Court.

12

a reasonable probability that it would change the outcome of the decision. The Appeals Council further noted that James submitted: (1) a questionnaire by Dr. Moyd dated November 29, 2017; (2) Medical Evidence from McLeod Spine Center dated August 17, 2017; (3) a questionnaire from Dr. W. L. Evans dated December 8, 2017; (4) Medical Evidence from Carolina Pine Regional Medical Center dated August 21, 2017 through February 1, 2018; (5) Medical Evidence from Pee Dee Orthopedic Associates dated November 20, 2017. Because the ALJ's decision was dated through August 2, 2017, the Appeals Council determined that this additional evidence did not relate to the period at issue. James argues that the questionnaire from Dr. Moyd, as well as the questionnaire from Dr. Evans, was not properly considered by the Appeals Council, and therefore requires this Court remand this case.

The Regulations do not require the Appeals Council to articulate its findings when denying review. Instead, the Regulations provide that the Appeal Council will consider additional evidence when it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.970(a)(5); *See Wilkins v. Dep't. of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (if a claimant submits evidence to the Appeals Council for review that is *new, material, and relates to the period on or before the ALJ's decision*, the Appeals Council must consider the newly submitted evidence.) (emphasis added). In cases where additional evidence is submitted to the Appeals Council, the Appeals Council first determines if the submission constitutes "new and material" evidence that "relates to the period on or before" the date of the hearing decision. *Meyer v. Astrue*, 662 F.3d 700, 704-705 (4th Cir. 2011). "New" evidence is evidence that is not duplicative or cumulative. *Wilkins*, 953 F.2d at 96 (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is "material" if there is a reasonable probability that the new evidence would change the outcome of the decision.

13

*Wilkins*, 953 F.2d at 96.

In *Meyer v. Astrue*, the Fourth Circuit determined that when a claimant submits additional evidence to the Appeals Council that was not before the ALJ that is new and material, the Appeal Council should evaluate the record, including the new and material evidence, to determine whether it warrants a change in the decision by the ALJ. 662 F.3d at 704-705. If the Appeals Council determines on review that the decision is contrary to the weight of the evidence, it may issue its own decision or remand the case. *Id. Meyer* is clear that the regulations require the Appeals Council to "consider" new and material evidence in deciding whether to grant review. *Id.* at 705-706. In this case, the Appeals Council denied James's request for review after determining the questionnaires do not relate to the relevant period in issue. In such a case, the regulations do not require the Appeals Council to articulate its rationale for denying a request for review. *Id.* James argues that *Bird v. Comm. of Social Sec. Admin* is instructive in this case. In *Bird*, the Fourth Circuit said, "[m]edical evaluations made after a claimant's last insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI. 699 F.3d 337, 340 (4th Cir. 2012). Evidence that was created after that time period could be 'reflective of a possible earlier and progressive degeneration.'" *Id.* at 341 (citing *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). James focuses specifically on the opinions of Dr. Moyd and Dr. Evans to argue that these opinions should have been considered by the Appeals Council because they "relate back" to the time period in question. Accordingly, he argues remand is necessary. In evaluating whether a remand is necessary, this Court views the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's decision. *Wilkins*, 953 at 95-96.

After a review of the record, this Court finds that the additional evidence submitted to the

14

Appeals Council does not necessitate a remand to the ALJ. Dr. Moyd completed a questionnaire on November 29, 2017, approximately four months after the ALJ denied James' claim for disability benefits. In response to pre-typed questions, Dr. Moyd indicates that he "can't answer honestly" whether James could engage in any more than "light work." In response to the question of whether it was "most probable" that James would have problems with attention and concentration sufficient to frequently interrupt his work day, Dr. Moyd indicated "yes" and further indicated in a subsequent question that basis of impairment was "major depressive disorder." Dr. Moyd gave November 8, 2016 as an approximate date of impairment. Dr. Moyd stated that the basis for determining James suffered from this impairment is that James saw a behavioral health counselor.

In this case, the ALJ already considered James's mental disorders and determined that James's depression and anxiety were severe impairments. Therefore, Dr. Moyd's answers do not provide additional evidence of an impairment or a worsening of an impairment that was not already considered severe and contemplated by the ALJ. Moreover, this additional evidence is cumulative of evidence that was already before the ALJ. As indicated by the Magistrate Judge, Plaintiff testified that he had attention problems at times, though he also reported that he could pay attention for hours. Indeed, medical evidence from several doctors within the record, including Dr. Moyd, suggests Plaintiff had normal attention and concentration. In fact, on January 3, 2017 and April 3, 2017, in two medical records dated after the approximate impairment date provided by Dr. Moyd, Dr. Moyd himself found James to have normal attention and concentration. As indicated by the Magistrate Judge, the ALJ noted several of the records indicating normal attention and concentration. The Appeals Council apparently determined that this questionnaire did not relate to the period at issue, thereby denying review. After reviewing the record as whole, the questionnaire filled out by Dr. Moyd provides a basis for remand,

15

as substantial evidence supports a finding that this evidence is not new material evidence prompting remand.

As to Dr. Evan's opinion, his questionnaire indicates that James would not be able to perform light work and that James would have attention and concentration problems during the workday caused by polyneuropathy, memory loss, cervical disc degeneration, osteoarthritis, and bipolar disorder. He based this opinion off of objective evidence such as EMG and MRI data, as well as medical history and physical examination and stated that James has been so impaired since July 5, 2017, approximately a month prior to the date of the decision deny benefits. This questionnaire itself was dated approximately four months after the ALJ's decision. However, much like Dr. Moyd's opinion, there was already detailed information within the record before the ALJ regarding James' issues with attention and concentration. Further, multiple records before the ALJ showed that James had normal ambulation and gait, including objective evidence including an MRI which was "essentially normal" for his age. James testified in April of 2017 that there is not anything he cannot do due to his disability, other than he is unable to work under pressure. Indeed, his own testimony reveals that he performed a wide array of daily activities, and was employed in August of 2017, when he told a doctor at McLeod Spine Center that he was having pain associated with his job where he was getting in and out of a trailer several times a day. Accordingly, this Court finds that substantial evidence supports the Commissioner's decision.

Finally, to extent James argues that this case is akin to *Meyer* and requires remand, this Court disagrees. *Meyer* made clear that the Appeals Council is not required to articulate specific findings when it denies review. Here, James argues that the Appeals Council erred in determining that the questionnaires do not relate to the period at issue. First, both of these questionnaires provide an approximate date of when James was so impaired, and as previously discussed, some of the information

is controverted by other evidence in the record. Second, as pointed out by the Magistrate Judge, *Meyer* is distinguishable because in that case, the ALJ suggested that an evidentiary gap contributed to his finding that the claimant was not disabled. Such is not the case here. The ALJ does not argue that the lack of a physician opinion, or any other dearth of evidence, contributed to his findings. Further, it does not appear to this Court that the additional evidence in question is new and material such that, had it been considered by the ALJ, it would provide a basis to change the ALJ's decision. Accordingly, this Court agrees with the Magistrate Judge that upon a review of the record, including the additional evidence provided to the Appeals Council, susbstantial evidence supports the Commissioner's decision.

## **Conclusion**

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to those objections, and the applicable law. For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge. [ECF No. 21]. The Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

Florence, South Carolina  
September 16, 2019

s/ R. Bryan Harwell  
R. Bryan Harwell  
Chief United States District Judge